IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Juan Bermea-Cepeda, ) | Case No. 8:11-cv-01231-JMC-JDA |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| v. ) | |
| ) | |
| Chaplain Chartier, Associate Chaplain ) | |
| Mims, Director Holt, Administrator Harrell ) | |
| Watts, and Warden, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on a motion to dismiss filed by Defendants [Doc. 40] and a motion for summary judgment filed by Plaintiff [Doc. 56]. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pretrial matters in pro se cases and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on May 16, 2011.[1] [Doc. 1.] Defendants filed their motion to dismiss on December 14, 2011. [Doc. 40.] By Order filed December 15, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 41.] After being granted an extension of time to file his response [Doc. 46], Plaintiff filed a response in

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on May 16, 2011. [Doc. 1 at 5 (Complaint dated May 16, 2011); Doc. 1-2 at 2 (envelope initialed and dated May 17, 2011 by mail room).]

opposition to the motion on February 16, 2012 [Doc. 51], in which Plaintiff also moved for summary judgment [Doc. 56²]. Defendants filed a reply on February 27, 2012 [Doc. 53], and Plaintiff filed a sur-reply on March 19, 2012 [Doc. 54].³ Accordingly, the motions are now ripe for review.

## BACKGROUND

Plaintiff is incarcerated at the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield"). [Doc. 1-1 at 2.] Plaintiff generally alleges Defendants violated his constitutional and religious rights to practice the Santa Muerte religion by denying him use of the chapel at FCI Edgefield in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). [*Id.* at 3.] Plaintiff seeks a jury trial; compensatory damages in the amount of $1,000,000; punitive damages in the amount of $1,000,000 jointly and severally; and such other relief as it may appear Plaintiff is entitled. [*Id.* at 17.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard

---

²Document Entry Numbers 51 and 56 are the same document. Upon closer review of the filing, it appears Plaintiff is both moving for summary judgment and responding in opposition to Defendants' motion to dismiss. Accordingly, the document has been re-filed as a motion for summary judgment [Doc. 56] as well as the response in opposition to Defendants' motion to dismiss [Doc. 51].

³The Court also considers the reply and sur-reply as the response and reply to Plaintiff's motion for summary judgment.

than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under *Bivens***

In *Bivens*, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of *federal* constitutional rights. 403 U.S. at 389. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983[4]; federal officials cannot be sued under § 1983, however, because they do not act under color of *state* law. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Mitchell v. Forsyth*, 511 U.S. 511, 530 (1985); *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir. 1988). To establish a claim under *Bivens*, a plaintiff must prove two elements: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States and (2) the defendant did so under color of federal law. *See Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted) (setting forth requirements for a § 1983 claim under color

---

[4]Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.

3

of state law); *see also Bivens*, 403 U.S. at 389 ("In [a previous case], we reserved the question whether violation of [the Constitution] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. Today we hold that it does.").

**Motion to Dismiss Standard**s

   **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

   *Rule 12(b)(6)*

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

4

**DISCUSSION**

**Sovereign Immunity**

As an initial matter, the Court notes *Bivens* claims are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (declining to extend a *Bivens* remedy to federal agencies); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (noting "a *Bivens* action does not lie against either agencies or officials in their official capacity"). Accordingly, Plaintiff's *Bivens* claims against Defendants in their official capacities should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[5]

**Religious Rights Claim**

Plaintiff alleges Defendants have violated his religious rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by not allowing him to have access to the institution chapel for purposes of having meetings and conducting group religious services in his practice of the Santa Muerte religion. [Doc. 1-1.] However, RLUIPA applies only to suits against states and does not create a cause of action against federal agencies or agents. *Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003). The Religious Freedom Restoration Act ("RFRA"), however, is similar to RLUIPA and initially applied to both the states and the federal government, but the Supreme Court concluded in *City of Boerne v. Flores*, 521 U.S. 507 (1997), that RFRA exceeded Congress's remedial powers over the states under section 5 of the Fourteenth Amendment. *See id.* at 532–36. Congress

---

[5]Sovereign immunity does not bar damages actions against federal officials in their individual capacities for violation of an individual's constitutional rights. *Gilbert v. Da Grossa*, 756 F.2d 1455, 1459 (citing *Davis v. Passman*, 442 U.S. 228 (1979)). Thus, to the extent Plaintiff sues Defendants in their individual capacities under *Bivens*, Plaintiff's claims are not barred by the doctrine of sovereign immunity, and the Court will address these claims.

"sought to avoid *Boerne*'s constitutional barrier by relying on its Spending and Commerce powers" in subsequently enacting RLUIPA. *Madison*, 355 F.3d at 315. Thus, Congress has created a parallel statutory scheme, using virtually identical language, in which "RFRA continue[s] to apply to the federal government" and RLUIPA "mirror[s] the provisions of RFRA" in suits against the states concerning institutionalized persons. *Id.* Because of the close connection in purpose and language between the two statutes, courts commonly apply "case law decided under RFRA to issues that arise under RLUIPA" and vice versa. *Redd v. Wright*, 597 F.3d 532, 535 n.2 (2d Cir. 2010). In an abundance of caution and liberally construing Plaintiff's pro se Complaint, the Court will treat the Complaint as alleging Defendants have violated Plaintiff's religious rights under RFRA and will address Plaintiff's claim.

RFRA prohibits "'[g]overnment' from 'substantially burden[ing]' a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Boerne*, 521 U.S. at 515–16 (alterations in *Boerne*) (quoting 42 U.S.C. § 2000bb-1). First, a plaintiff seeking to state a claim under RFRA must show the government has substantially burdened his exercise of religion. *Woods v. Evatt*, 876 F. Supp. 756, 762 (D.S.C. 1995). Once the plaintiff makes this showing, the government then must show the burden was placed on the exercise of religion "in furtherance of a compelling governmental interest" and there was no less restrictive means to further that governmental interest. *Id.* (quoting 42 U.S.C. § 2000bb-1).

RFRA does not define "substantial burden," but the Supreme Court has defined the term in the related context of the Free Exercise Clause as "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd., Ind. Employment Sec. Div.*, 450 U.S. 707, 717–18 (1981). However, the burden placed on the religious exercise "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987) (citations omitted), *aff'd. sub nom.*, *Hernandez v. C.I.R.*, 490 U.S. 680 (1989). In *Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006), the Fourth Circuit Court of Appeals stated:

> We likewise follow the Supreme Court's guidance in the Free Exercise Clause context and conclude that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs."

*Id.* at 187 (quoting *Thomas*, 450 U.S. at 718).

Here, Plaintiff cannot prevail on a claim under RFRA because he has failed to set forth facts that could establish Defendants have imposed a substantial burden upon Plaintiff's exercise of religion. Plaintiff asserts he was denied access to the chapel at FCI Edgefield for meetings and religious services. [Doc. 1-1 at 3–4.] However, Plaintiff fails to allege or explain how denial of use of the chapel substantially burdens his practice of

7

Santa Muerte.[6] Plaintiff fails to allege the practice of Santa Muerte requires chapel worship or group worship. Moreover, Plaintiff concedes he has been told he has access to personal religious and devotional materials and has been able to individually practice his religion in his cell. [Doc. 1-1 at 5–6.] Accordingly, Plaintiff has failed to assert interference with a tenet or belief that is central to Santa Muerte, *see Graham*, 822 F.2d at 851, or that substantial pressure has been placed upon him to modify his behavior and to violate his beliefs, *see Thomas*, 450 U.S. at 718. Therefore, Defendants' motion to dismiss should be granted.[7]

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity because their conduct, to the extent they acted, did not violate any clearly established rights of which a reasonable government official would have known. The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the

---

[6]Instead, Plaintiff argues that he should be provided access to the chapel because other religious groups are provided access to the chapel. [Doc. 1-1 at 15.] However, the Supreme Court has held that various religious groups are not required to have identical treatment. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).

[7]Because the Court concludes Plaintiff cannot prevail on a claim under RFRA because he has failed to set forth facts that could establish Defendants have imposed a substantial burden upon Plaintiff's exercise of religion, the Court declines to address Defendants' arguments that (1) Plaintiff is not entitled to money damages under RLUIPA or RFRA; (2) the Court lacks personal jurisdiction over Defendants Holt and Watts; and (3) Defendant Warden Atkinson should be dismissed for lack of personal involvement.

alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion to dismiss be GRANTED and Plaintiff's motion for summary judgment be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin  
United States Magistrate Judge

May 8, 2012  
Greenville, South Carolina